# MEMO ENDORSED



USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/5/08

U.S. Department of Justice

United States Attorney
Southern District of New York

86 Chambers Street, 3rd Floor
New York, New York 10007

September 2, 2008

BY HAND
Honorable P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 2260
New York, New York 10007

Re:   Morel v. Mukasey
      Dkt. No. 08-cv-6498 (PKC)

Dear Judge Castel:

Petitioner shall show cause in writing why this action should not be transferred to the U.S. Court of Appeals for the Second Circuit. Petitioner's submission is due September 16, 2008.

SO ORDERED
[signature]
USDJ
9-5-08

I am writing pursuant to your order of August 4, 2008. As Your Honor is aware, petitioner Juan Carlos Morel ("Morel") filed the above-referenced petition for a writ of habeas corpus under 28 U.S.C. § 2241 on July 22, 2008, asking the Court to "review his unlawful detention by the U.S. Immigration and Naturalization Service (the INS)[1] and . . . enjoin his removal from the United States." Petition at 1. As Your Honor is also aware, Morel was returned to his home country, the Dominican Republic, the following morning.

In response to Your Honor's questions during the August 4, 2008 conference regarding whether Morel was in ICE custody at the time his habeas petition was filed, the Government submits the declarations of Juanita Quinones and George Nicholes, establishing that Morel was not being detained by ICE at that time. Accordingly, to the extent his Morel sought to challenge his detention by ICE, that claim was moot. However, as set forth more fully below, to the extent Morel is challenging ICE's determination that he be subjected to expedited removal, that decision may be reviewed through a petition for review in the Court of Appeals for the Second Circuit. See 8 U.S.C. § 1252(a)(1) (governing judicial review of "orders of removal"). Accordingly, this Court should transfer this action to the Court of Appeals for the Second Circuit, pursuant to 28 U.S.C. § 1631.

---

[1] As of March 1, 2003, the former INS ceased to exist, and its functions were transferred to three new agencies in the Department of Homeland Security ("DHS"): (1) the United States Immigration and Customs Enforcement ("ICE"), (2) the Bureau of Citizenship and Immigration Services ("CIS"), and (3) the Bureau of Customs and Border Protection. See Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 471, 116 Stat. 2135 (Nov. 25, 2002).

**Facts**

Morel entered the United States as a crewman on a cruise ship operated by Royal Caribbean International ("Royal Caribbean") on December 10, 2005, with a D-2 visa. *See* Ex. A, Notice to Detain, Remove, or Present Alien. He remained in the United States after the visa expired. On July 14, 2008, an ICE Fugitive Operations team apprehended Morel and discovered his immigration status. *See id.*; Ex. B, Declaration of Juanita Quninones, ¶ 5. Upon learning that Morel had entered as a crewman on a Royal Caribbean vessel, ICE determined that he was subject to the procedures of the Immigration and Nationality Act ("INA") and regulations governing crewmen – specifically, 8 U.S.C. § 1282 and 8 C.F.R. § 252.2(b) – which provide for the alien's summary removal at the expense of the vessel on which he arrived. *See* Ex. B, ¶ 6. Accordingly, ICE contacted Royal Caribbean, which then agreed to arrange for Morel's removal from the United States and to detain him until his departure could be effected. *See id.* On July 18, 2008, Royal Caribbean sent two officers from an affiliated security provider, Trident Security ("Trident"), to take Morel from ICE and to carry out the arrangements for his departure. *See id.* ¶ 7. The two officers, George Nicholes and Tom Ferro, took Morel to the Dominican Consulate, and from there to the DoubleTree Hotel in Jamaica, New York. *See* Ex. C, Declaration of George Nicholes, ¶¶ 4, 5. Morel remained at the DoubleTree, under the watch of rotating Trident officers, until July 23, 2008, when he flew to the Dominican Republic on an American Airlines flight, booked by Royal Caribbean. *See id.* ¶¶ 5, 6.

Morel filed the instant habeas petition on July 22, 2008, and named as respondents Michael B. Mukasey, the Attorney General of the United States, and Andrea Quarantillo, the CIS District Director for the New York District. In the petition, Morel claimed that he was "in the custody of [ICE] at its Service Processing Facility (SPC) located at 201 Varick Street, New York, New York 10014." *See* Petition, ¶ 1. He contended that his "detention by the Respondent [was] in violation of the Constitution, the INA, and the [Administrative Procedure Act]." *Id.* ¶ 17. In his Prayer for Relief, he requested that the Court order the respondents, *inter alia*, to (1) "release [Morel] immediately on his own recognizance or on a reasonable bond or ordering an Immigration Judge to hold a bond hearing"; (2) "[i]ssue an Order declaring that the Respondent's conduct is unconstitutional and unlawful"; and (3) "[i]ssue an order directing the Respondent not to transfer [Morel] from 201 Varick Street." *Id.*, Prayer for Relief.

**Applicable Law**

A crewman is defined as an alien who is "serving in good faith as such in a capacity required for normal operation and service on board a vessel . . . or aircraft, who intends to land temporarily and solely in pursuit of his calling as a crewman. . . ." 8 U.S.C. § 1101(a)(15)(D)(i). Pursuant to 8 U.S.C. § 1282(a)(1)-(2), alien crewmen are given only limited permission to land temporarily in the United States. An immigration officer "may, in his discretion, grant the crewman a conditional permit to land temporarily pursuant to regulations prescribed by the Attorney General, subject to revocation . . . and for a period of time, in any event, *not to exceed . . . twenty-nine days*." *Id.* (emphasis added). Moreover, if an immigration officer determines that an alien

2

is not a bona fide crewman, or does not intend to depart on the vessel or aircraft which brought him, revoke the conditional permit to land . . . , take such crewman into custody, and require the master or commanding officer of the vessel or aircraft on which the crewman arrived to receive and detain him on board such vessel or aircraft, if practicable, and such crewman *shall be removed from the United States at the expense of the transportation line which brought him to the United States.* Until such alien is so removed, any expenses of his detention shall be borne by such transportation company. *Nothing in this section shall be construed to require the procedure prescribed in section 1229a* of this title [governing removal proceedings] to cases falling within the provisions of this subsection.

8 U.S.C. § 1282(b) (emphasis added).

The regulations, in turn, provide that a crewman "whose landing permit is subject to revocation . . . may be taken into custody by any immigration officer without a warrant of arrest and be transferred to the vessel of arrival," if the vessel is still in port in the United States. 8 C.F.R. § 252.2(a). If, however, the crewman is apprehended after the vessel of arrival has left the United States, different requirements apply, depending on when the alien entered the United States. *See* 8 C.F.R. § 252.2(b). A crewman who was "granted landing privileges prior to April 1, 1997, and who has not departed foreign on the vessel of arrival . . . is subject to removal proceedings under section 240 of the [INA]." *Id.* However, a crewman who, like Morel, "was granted landing privileges on or after April 1, 1997, and who has not departed . . . *shall be removed from the United States without a hearing*, except as provided in § 208.2(b)(1) of this chapter [permitting such aliens to apply for asylum]." *Id.* (emphasis added). Moreover, "if the alien is removed within 5 years of the date of landing, removal of the crewman shall be at the expense of the owner of the vessel." *Id.*

### To the Extent Morel Sought to Challenge His Detention by ICE, That Claim Was Moot at the Time His Habeas Petition Was Filed

Morel's challenge to his detention by ICE was moot prior to the filing of this petition. When he filed this petition, on July 22, 2008, Morel sought both release from ICE custody and an injunction against any physical transfer, *see* Petition, Prayer for Relief. By that time, however, he had already been transferred from ICE's detention facility to the custody of Royal Caribbean. *See* Ex B, ¶ 7. He did not, at any point following his apprehension on July 14, 2008, pass through the custody of the U.S. Marshals or any other government entity. *Id.* ¶ 8. Rather, since July 18, 2008, Morel was detained not at ICE headquarters in New York City, but in a hotel room in Jamaica, New York, under the supervision of Royal Caribbean's security provider, Trident. *See* Ex. C, ¶ 5. Therefore, habeas jurisdiction did not exist with respect to ICE when the petition was filed.[2]

---

[2] Moreover, to the extent Morel sought to challenge his present physical confinement on July 22, 2008, the Court lacked jurisdiction to issue a writ because he failed to name his immediate custodian as respondent. *See* 28 U.S.C. § 2243 (the "writ . . . shall be directed to the person having custody of the person detained"); *see also Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004) ("in challenges to present physical confinement, . . . the immediate custodian, not a

3

## The Court Should Transfer This Matter to the U.S. Court of Appeals for the Second Circuit in the Interest of Justice

Although this Court lacks jurisdiction to review Morel's claims pertaining to his removal under 28 U.S.C. § 2241, it may transfer this petition to the Second Circuit pursuant to 28 U.S.C. § 1631, for review of Morel's challenges to ICE's application of 8 U.S.C. § 1282 and 8 C.F.R. § 252.2(b) to his case. Under 28 U.S.C. § 1631,

> Whenever a civil action is filed in a court . . . including a petition for review of administrative action, . . . and that court finds that there is a want of jurisdiction, that court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed or noticed for the court to which it is transferred on the date upon which it was actually filed.

Pursuant to 8 U.S.C. § 1252(a)(1), an alien may obtain "judicial review of a final order of removal" only by filing a petition for review of the administrative action in the appropriate court of appeals. The REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 231 (May 11, 2005) (the "REAL ID Act"), unequivocally divests federal district courts of subject matter jurisdiction—whether through habeas corpus or otherwise—to review removal orders. *See* 8 U.S.C. § 1252(a)(5), *as amended by* REAL ID Act, § 106(a) ("Notwithstanding any other provision of law . . . a petition for review shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act . . . ."). Such petition "must be filed not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). Because Morel filed the instant action within 30 days of ICE's determination that Morel be removed at Royal Caribbean's expense, his challenge could have been filed as a petition for review – provided that ICE's determination can be regarded as an "order of removal."[3]

A petition for review typically challenges a final order entered in removal proceedings pursuant to 8 U.S.C. § 1229a – which proceedings are not available to crewmen. However, 8 U.S.C. § 1252(a)(5) explicitly provides for review of orders of removal entered under "any provision" of the INA. Moreover, the courts of appeals have also found jurisdiction to review determinations reached in proceedings not covered by 8 U.S.C. § 1229a that can be considered the "functional equivalent of a removal order." *Kanacevic v. INS*, 448 F.3d 129, 134 (2d Cir. 2006); *see also id.* at

---

supervisory official who exercises legal control, is the proper respondent"); *Henriquez v. Ashcroft*, 269 F. Supp. 2d 106, 108 (E.D.N.Y. 2003). In any event, to the extent the Court may have had jurisdiction over a pure detention challenge, any such challenge is now moot because Morel was released from detention upon his removal to the Dominican Republic.

[3] Unlike in a habeas petition under 28 U.S.C. § 2241, "custody" is not a prerequisite to review under 8 U.S.C. § 1252.

4

133-35 (concluding that the denial of relief in "asylum-only" proceedings pursuant to 8 C.F.R. §§ 208.2(c)(iii) and 217.4(a)(1) – under which certain aliens may apply for asylum, but are otherwise subject to removal without further proceedings – was the functional equivalent of removal order and thus reviewable); *Miller v. Mukasey*, __ F.3d __, 2008 WL 3863476, at *2-4 (2d Cir. Aug. 21, 2008) (reviewing immigration officer's reinstatement of prior removal order pursuant to 8 U.S.C. § 1231(a)(5)); *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 144-51 (2d Cir. 2008) (same).

Although there is no recent precedent regarding the availability of judicial review of an order entered pursuant to 8 C.F.R. § 252.2, there is a "strong presumption in favor of judicial review of administrative action." *See INS v. St. Cyr*, 533 U.S. 297, 298 (2001). In order to avoid "uncertainty over exactly what procedure" – if any – a former crewman "could pursue in order to obtain review," *see Kanacevic*, 448 F.3d at 135, this matter should be transferred to the Court of Appeals for the Second Circuit pursuant to 28 U.S.C. § 1631, to allow for resolution of Morel's legal challenges.

Thank you for your consideration of this matter.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By: _____
NATASHA OELTJEN
Assistant United States Attorney
Tel.: (212) 637-2769
Fax: (212) 637-2786

cc:   BY FEDERAL EXPRESS
      Salvador Delgado
      Attorney for Petitioner
      81-05 Roosevelt Avenue
      Jackson Heights, NY 11372
      Tel.: (718) 457-6799
      Fax: (718) 457-6817